### UNITED STATES v. LOUSSAC et al.

Third Division. Anchorage. February 9, 1923.

No. 320–A.

**1. Bail ⊗⧴77(1)—Courts—Criminal Law.**

Gates was arrested on accusation of having committed a misdemeanor; defendants were his bondsmen. On the day set for trial before the commissioner, Gates was not present in court, but was represented by his attorney, who was present. The case was postponed for another day, and again Gates did not appear, though his attorney was present to represent him. Suit was thereupon brought against the bondsmen in the justice court. The answer set up that Gates' absence was caused by unavoidable conditions of tide and storm, and the jury found a verdict in favor of the bondsmen and against the United States. Thereupon the United States appealed to the district court. A demurrer was again interposed to the government's alleged cause of action on the bond. *Held*, that a justice of the peace in Alaska

⊗⧴See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

has no authority or jurisdiction to declare the forfeiture of a bail bond, and no jurisdiction to hear the suit and enter judgment against the bondsmen on such bond.

**2. Bail ⊜⇒77(1)—Trial.**

Where a defendant in a criminal misdemeanor case fails to appear at the time of the trial in person, but does appear by his attorney, his bond is not subject to forfeiture until the entry of judgment.

**3. Criminal law ⊜⇒254—Trial.**

Where a defendant in a criminal misdemeanor case has appeared and pleaded in justice court, the justice has a right to proceed to trial at the time set, upon a request from defendant's attorney then present.

**4. Bail ⊜⇒57—Pleadings—Suit on Bond.**

In a suit on bail bond, *held*, that the recital in the bond sued on that defendant has been arrested upon a certain charge is not the equivalent to a statement that "a criminal action" has been commenced against him for that charge, and the bond is void.

George Gates was charged by a complaint filed in justice court for Knik precinct in the third division of Alaska, in two counts, with violations of the Alaska Bone Dry Law (48 USCA §§ 261–291 [U. S. Comp. St. §§ 3643b–3643r]); the first count charging possession of intoxicating liquor, and the second count charging the manufacture of intoxicating liquor. A warrant of arrest was issued, and Gates duly arrested and brought into court. His bail was fixed by the court at $1,000, which he gave, with Z. J. Loussac and W. G. Sutton, defendants herein, sureties. Thereafter Gates pleaded not guilty, and his trial was set for August 3, 1922. At the hour fixed Gates was not present in court, but was represented by his attorney, Arthur Frame, who asked that the case be continued, and the trial was postponed and set for August 4, 1922, at 5 p. m. Gates again failed to appear at the hour set for trial, and the court declared his bond forfeited for nonappearance. The sureties were notified of the facts, and they appeared in open court and stated they were unable to produce the said George Gates. Thereafter this action was instituted against the sureties in the said justice court to recover upon the bond. The facts already stated herein were recited in the complaint, to which defendants demurred. The demurrer was overruled. Defendants answered, denying practically all of the allegations of the complaint, and set up as an affirmative defense the allegations that Gates, the defendant

⊜⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in the criminal action, after his arraignment and plea, visited his homestead on the other side of Cook Inlet from the town of Anchorage, where his trial was to be held; that the said Gates was prevented from returning to Anchorage at the time set for trial, because the tide and wind were against him on the water; that he thereafter returned, on August 6, and duly excused his failure to appear at the time set for trial. The record does not show the subsequent proceedings in the criminal case. The action on the bond was tried in justice court before a jury, and a verdict rendered for defendants. Thereupon the United States appealed to this court, and the demurrer of defendants was again urged and argued.

Sherman Duggan, U. S. Atty., of Ketchikan, J. A. Hurley, U. S. Atty., of Fairbanks, and Harry G. McCain, U. S. Atty., of Ketchikan.

Arthur Frame, of Anchorage, L. V. Ray, of Seward, Leopold David, of Anchorage, and Carl Almy, of Lost Harbor, for defendants.

RITCHIE, District Judge. Three questions have been considered as raising valid objections to the liability of the defendants on this bail bond. The first is that, although the defendant Gates was absent at the date set for his trial he was represented by his attorney. The Code of Alaska provides that a defendant may be tried upon a misdemeanor charge in his absence, if he is represented by counsel. This gives rise to two questions: Is it discretionary with the justice in such a case to proceed in the absence of the defendant? And, if so, can he do so if demand for trial is not made by attorney for defendant? Several cases from code states have been cited in which it was held that, in case demand was made by the attorney for defendant that trial proceed, the justice might or should do so. In United States v. Kono, 4 Alaska, 613–616, Judge Lyons said:

"Since our statute provides that the defendant's presence in a trial for misdemeanor is not required until judgment is entered, his bond is not subject to forfeiture, providing he appears by counsel, until the entry of judgment."

In that case the record appears to show that when Kono's case was called he was represented by counsel, "who were at all times ready to proceed with the trial." This latter fact is stated in the order setting aside an order forfeiting Kono's bail.

In State v. Evans, 13 Mont. 239, 33 P. 1010, the Supreme Court of Montana held that, when a defendant was represented by attorney at the time fixed for trial, who offered to proceed in the absence of the defendant, the court erred in forfeiting cash bail in the sum of $500, and ordered the bail money refunded and the forfeiture set aside.

In People v. Welsh, 88 App. Div. 65, 84 N. Y. S. 703, the court held that, where a defendant had been arraigned and had pleaded in justice court, and was represented at the time of trial by his attorney, who demanded that the trial proceed, it was the duty of the court to try the case in the absence of the defendant, and that it erred in declaring a forfeiture. The same ruling was made in Kenworthy v. City of El Dorado, 7 Kan. App. 643, 53 P. 486, by the appellate court of Kansas.

I am inclined to hold that, where defendant has appeared and pleaded in justice court, the justice has a right to proceed to trial at the time set, with or without a request from defendant's attorney, if he is present, although I think it is fairly debatable whether or not it could be done without a request from the attorney. As I look at the complaint in this case, it is not necessary to decide this question.

In support of the demurrer it was strongly urged by counsel for the defendants that the bond is fatally defective in form, and therefore defendants cannot be held upon it. The bond reads as follows:

"The above-named defendant having been arrested upon the charge of manufacturing intoxicating liquor in violation of the Alaska Bone Dry Law, he has been duly admitted to bail by Hon. W. H. Rager, United States Commissioner for said precinct, pending his trial, in the sum of $1,000: Now, therefore, we, the undersigned, the said George Gates, as principal, and Z. J. Loussac, of Anchorage, Alaska, by occupation druggist, and W. G. Sutton, of the same place, by occupation laundryman, as sureties, hereby undertake that the above-named George Gates shall appear and answer the charge above mentioned in whatever court it may be prosecuted, and shall at all times render himsef amenable to the orders and process of the court, and if convicted shall appear and render himself in execution thereof, or if he fail to perform any of these conditions that we will pay to the United States the sum of $1,000."

The statutory form for a bond conditioned for the appearance of defendant after arraignment in the justice court begins as follows:

"A criminal action having been commenced on the ———— day of
———— in justice court aforesaid against A B for the crime of (desig-
nating it generally), and he having been duly admitted to bail by the
justice of said court in the sum of $————," etc.

As already shown, the bond in this case recites:

"The above-named defendant having been arrested upon the charge
of manufacturing intoxicating liquor in violation of the Alaska Bone
Dry Law."

Counsel for defendants urge that this is a total failure to com-
ply substantially with the requirements of the statute. They
point out that the recital that defendant has been arrested upon
a certain charge is not equivalent to a statement that a crimi-
nal action has been commenced against him for that charge.
The objection may seem somewhat technical, but the Oregon
Supreme Court has sustained similar technicalities, pursuant to
the rule that a surety is entitled to stand upon the strict letter
of his bond. The United States attorney argues that there is no
substantial difference between the statement that a criminal ac-
tion has been commenced against a man for a certain offense,
and the statement that he has been arrested upon that charge.
In order to hold that the two are substantially the same, it is
necessary to hold that the statement that a man has been ar-
rested upon a charge means explicitly that an action has been
commenced against him for the same charge. It is a rather
close and perplexing question, but on the following Oregon
authorities I am inclined to believe that the bond is an insuffi-
cient compliance with the statute.

In State v. Gardner, 29 Or. 254, 45 P. 753, the state sought
to recover on a bond reciting that one Downey had been held
to answer on a charge of larceny of a cow, and had been ad-
mitted to bail in the sum of $500; the bond providing that
Downey should appear and answer the charge, in whatever
court it might be prosecuted, and at all times render himself
amenable to the orders and process of the court, and, if con-
victed, appear for judgment and render himself in execution—
that being the language of the statute. It appears, however,
that this bond was given on August 18, 1893, and that either
before or after that time the preliminary hearing had been con-
tinued to August 21. Downey failed to appear on August 21,
the court declared his bond forfeited, action was brought to re-
cover upon it, and judgment given in the lower court. It was

reversed by the Supreme Court, on the ground that the sureties did not contract for Downey to appear on August 21. This was a somewhat different question from that in the case at bar, but it shows the disinclination of the courts to enforce forfeiture, where there is any defect in the form of the bond.

In Hyde v. Cross, 25 Or. 543, 37 P. 59, the Oregon Supreme Court reversed a judgment upon a bail bond, because in the criminal case in which it was given the defendant had been indicted for the crime of larceny by stealing a gelding. When the case came up in the circuit court, the matter by direction of the court, on motion of the district attorney, was resubmitted to the grand jury over the defendant's protest, and at the same time it was ordered that defendant be still held on the bond previously given. The grand jury returned another indictment, charging defendant with larceny by stealing a horse from the same party at the same time and place and of the same value as the gelding mentioned in the first indictment. The defendant failed to appear for trial and the undertaking was declared forfeited. The Supreme Court held that:

"The act of the court in thus resubmitting the matter to the grand jury at the instance of the state amounted to a dismissal of the indictment specified in the bail bond and clearly operated as a discharge of the sureties."

In Malheur County v. Carter, 52 Or. 616, 98 P. 489, the bond sued on recited that an examination had been held in justice court, charging Lee Kurts with the crime of larceny of a cow, and the said Lee Kurts having been held to appear before the grand jury of the county at the next regular term of the circuit court, and having been admitted to bail, the sureties undertook that Kurts should appear at the time stated, and should at all times render himself amenable to the orders and process of the court, including judgment and sentence. The Supreme Court said:

"As we understand the language, it does no more than recite the charge preferred against Kurts before the justice, and upon which he was arrested, and not that for which he was held to appear before the grand jury, a thing wholly without the jurisdiction of the justice. In this state the legal cause for the taking of bail by a committing magistrate is that an order has been made by such officer that the accused be held to answer upon a charge, stating briefly the nature of the crime; but a recital that Kurts had been examined upon a charge of the larceny of a cow, and was held to appear before the

grand jury of the county, is not sufficient to support a contract to ap-
pear at the circuit court."

It will be noticed that in this case the defect in the bond lay
in its failure to recite the facts accurately, which is very much
like the case at bar. In the case under consideration, as already
noted, the allegation simply is that Gates had been arrested up-
on a charge of violating the Bone Dry law, but nowhere in the
bond does it recite that the bond was given in a criminal action
which had been commenced against Gates. The defect lies in
the fact that he may have been arrested upon the charge of man-
ufacturing intoxicating liquor, when in fact no criminal action
upon that charge had been commenced against him. It is cer-
tainly a failure to state distinctly that the bond was given to re-
quire Gates to appear in a criminal action which had been
commenced against him, and in view of the Oregon decisions
cited it appears to me to be a substantial defect.

The third objection to the complaint is also a perplexing one,
but I am constrained to hold that by the best reasoning the de-
fect to which it is addressed is likewise fatal. The Code of
Alaska (section 2346) provides that, when a defendant has giv-
en bail to appear in the district court and failed to do so at the
time stipulated, the court may declare a forfeiture of the bond,
noting the fact in its journal. That necessarily gives the gov-
ernment the right to sue upon the bond. However, section 2347
provides that, if the defendant appears at any time before final
adjournment of the court and satisfactorily excuses his failure
to appear, the court may direct the forfeiture of the undertak-
ing to be discharged upon just terms.

No provision whatever is made for the declaration of for-
feiture of a bail bond by a justice of the peace, and the provi-
sions governing such forfeitures in the district court are clearly
inapplicable. In the first place, when a forfeiture is ordered in
the district court, the fact must be entered upon the court jour-
nal. A justice of the peace has no journal, as it is not a court of
record. Memoranda are made from time to time by the jus-
tice of successive steps taken in a case, but these are not journal
entries. In the next place, the district court is authorized to dis-
charge a forfeiture at any time within the term. A justice
court has no terms; therefore a justice court could not set
aside a forfeiture after having once ordered it. This would
make the enforcement of the forfeiture more drastic in the jus-

tice court than in the district court, which would be a decidedly novel provision of law, especially in view of the established principle that "forfeitures are odious to the law."

No court, however exalted, has any jurisdiction that is not conferred upon it by law. In the United States all courts are creations of statutory or constitutional provisions, and their jurisdiction is fixed by the law or Constitution creating them. This was decided in 1803 in Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, in which Chief Justice Marshall laid down the rule that the Supreme Court, being created by the Constitution, must find the limits of its jurisdiction in that instrument. It is also a fixed principle that there are no presumptions in favor of the jurisdiction or proceedings of a justice court. It is difficult, then, by any construction of the Alaska Code, to find any authority for the exercise of the right of forfeiture of a bail bond by a justice of the peace. This view is strengthened by the fact that in England, when a defendant out on bail failed to appear in the criminal court at the time fixed, the fact was declared and the case estreated to the exchequer for further proceedings. In several of the American states it is provided that, where a defendant has failed to appear in justice court, the fact must be certified up to the court of record above, which shall proceed to enforce forfeiture in its discretion.

In view of the history of bail bonds in England and in the United States, and the proceedings for their forfeiture and their enforcement against the sureties, it is difficult to find any authority in law for the action of the justice court in this case. It may be argued that, since it was a justice court case and the default in appearance occurred in that court, no other court could take cognizance of the right of forfeiture of the bond. If this is true, the failure lies with the legislative power. The courts of record cannot confer upon a justice court jurisdiction which is not given it by the legislative power. It does not appear to me, however, that there need be in such case a total failure of the right of the government to recover upon a criminal bond after default by the party held. The justice court could make an order reciting the failure of the defendant to appear at the time set, and on the record made in the justice court the United States attorney could bring an action in district court to recover upon the bond. It is true that there is no specific provision for such a proceeding, but if it does not

exist by virtue of the general right of action upon any contract for the payment of money after a breach, then there can be no recovery upon default of justice court bonds until the Legislature or Congress provides a remedy.

It is worth while to note that there is no limitation in the Code upon the amount which a justice of the peace may fix as bail for a defendant in his court. If it should be held that he may require a bond for a larger amount than $1,000, and he should in any case require a larger bond than that, and default should be made, the anomalous situation would be presented of a justice of the peace having the right to declare a forfeiture of a bond in an amount exceeding the amount of his jurisdiction in the matter of recovery. It might be argued that the United States could either sue in the district court or sue in justice court, remitting the excess over $1,000; but the situation shows the numerous difficulties in the way of conceding jurisdiction to the justice court in a matter of this kind, where no express provision of law is made for it.

On both of the last two grounds, although I recognize that the whole case is involved in more or less doubt, and that forceful arguments can be and have been made, both for and against the government's case in this action, I believe the better view of the law requires that the demurrer be sustained. I do this with more confidence because of the following declaration by Chief Justice Marshall, describing the principle underlying the giving of bail, often quoted by other courts:

"The object of a recognizance is not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but repairs the default as much as is within his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in government to extract from an innocent man a penalty, intended only to secure a trial, because the trial was suspended, in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If he be found guilty, he must suffer the penalty intended by the law for his offense, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial. The reasonableness, then, of the excuse, for not appearing on the day mentioned in the recognizance, ought to be examined somewhere, and no tribunal can be more competent than

that which possesses all the circumstances of the original offense, and of the default."

I think every intendment should be against a forfeiture, and no recovery should be had upon a bond, except upon a clear showing of liability under its conditions, including a showing that the government has suffered loss by reason of the failure of the obligors to live up to all its conditions, without reasonable excuse for such failure.